## The People on the relation of James I. Mead v. The Treasurer of Ingham County.

*Superintendents of the poor: Removal from office: Supervisors.* The supervisors have no general authority to remove from office at their discretion superintendents of the poor; the statute (*Comp. L. 1871* § *477, Sub. 14*) giving them express authority to remove on the specific grounds of neglect or refusal to report or to give bonds, and no other power of removal being conferred, a general authority to remove will not be implied as a consequence of the power to appoint.

*Superintendents of the poor: Removals from office.* The general statute concerning removals (*Comp. L. 1871, ch. 11*) contains no provision applicable to superintendents of the poor. Our state system favors appointments for fixed periods and almost entirely rejects the policy of removals at will, and this rule of action appears to have been observed in the regulations concerning superintendents of the poor.

*Mandamus: Title to office: Warrants: Officers de facto.* On an application for mandamus to require the county treasurer to pay an order drawn by persons claiming to be superintendents of the poor, the legal title of the officers will not be tried; but it appearing on the record that their appointment was unauthorized, mandamus will not be granted unless it appears that notwithstanding the want of title, they have got actual possession and are generally reputed to be such officers, and are hence officers *de facto.*

*Officers: Void appointment: Recognition.* The supervisors having acted without authority in making the appointment of new officers to fill a supposed vacancy caused by their attempted removal of existing officers, their immediate recognition of the appointment as one to be respected, cannot be regarded as of any importance; they merely attributed validity to their own invalid act.

*Officers: Recognition.* One of three superintendents having been a party to the controversy out of which resulted the attempted removal by the supervisors of the other two, and the appointment of others in their places, his recognition of the new appointees as his colleagues or co-superintendents, would be of little force to make out that they were officers *de facto.*

MEAD *v.* TREASURER OF INGHAM COUNTY.

*Mandamus: Answer: Officers de facto: Acquiescence.* In mandamus cases where the matter is heard on petition and answer, the answer is to be taken as true; and the statement in the answer in this case that the superintendents sought to be illegally removed have retained the files and records of their offices, have constantly denied the right to make the removal, and have continued to act as officers, is conclusive against the claim of the new appointees that they have acted as such officers with general acquiescence in their right.

*Heard April 17. Decided April. 24.*

Application for Mandamus.

*S. F. Seager* and *H. B. Carpenter,* for relator.

*H. P. Henderson,* for respondent.

GRAVES, J:

The board of supervisors of Ingham county, at a special meeting in March last, passed a resolution to remove from office two of the county superintendents of the poor, namely: Messrs. Hayner and Huntington, and to appoint in their place Messrs. Craddock and Williams. Both Hayner and Huntington had some time to serve. The relator was the third superintendent under an appointment made previously, and was not disturbed.

This proceeding by the supervisors was caused by conflicting action concerning the purchase of a poor-house farm for the county, a majority being of the opinion that Messrs. Hayner and Huntington had violated faith with the supervisors in certain transactions connected with the purchase and had attempted a fraud on the county, and it was upon this ground that the resolution was based. It was not founded on the authority contained in subdivision 14 of section 11 of the general act defining the powers and duties of boards of supervisors.—§ *477, C. L.* They were not complained of for any neglect to report or give bonds, and the resolution failed to receive the vote required by that statute.

Having passed the resolution to oust Hayner and Huntington, and to put Craddock and Williams in their place,

36 MICH.—53.

the supervisors ordered the respondent to pay all orders signed by a majority of the board of superintendents, made up of relator, Craddock and Williams.

A few days afterwards, and on March 19, the relator and Craddock and Williams met, and assuming to be the board of superintendents, united in drawing an order in favor of one Woodworth or bearer for six dollars and forty-four cents on the respondent, and he refused to pay it, on the ground, in substance, that Craddock and Williams were not superintendents, and hence that the order was not sanctioned by a majority.

The relator insists that Craddock and Williams were superintendents, and that the order was well drawn, and he asks that a mandamus may be awarded to compel the respondent to pay the order, it being admitted that he has funds applicable to legal orders.

The counsel for relator have not been able to point out any provision giving express power to the board of supervisors to make the removal attempted in this case, and we have not been able to discover any, and we think the argument in favor of implying the power is not well founded.

The statute fixes the term of the superintendents at three years, and the supervisors are required to appoint for such term.—§ *1817, C. L.* And under the provision contained in the supervisors' act for making removals the supervisors are empowered to remove on the specific grounds of neglecting or refusing to report or to give bonds.—*Ch. 10, C. L., sub. 14, § 477.*

The general statute concerning removals (*ch. 11, C. L.*) contains no provision applicable to superintendents of the poor. Hence there would seem to be no provision for the removal of these officers except the specific regulation in the supervisors' act. It would therefore seem that the legislature meant to confer on the supervisors a power to remove on the two specified grounds, but had no intention to give the right on any other ground, or to delegate to the supervisors a discretionary general power to remove. The pro-

vision in the supervisors' act, in so far as it applies to super-intendents of the poor, would be rendered entirely gratuitous if a general authority to remove were to be implied or should be considered as a consequence of the power to appoint.

Our state system favors appointments for fixed periods, and almost entirely rejects the policy of removals at will, and this rule of action appears to have been observed in the regulations concerning superintendents.

Considering, as we must, that the supervisors were not empowered to remove Hayner and Huntington for the cause assigned, it follows that the resolution for their removal created no vacancy to be simultaneously filled by the appointment of Craddock and Williams. Their appointment consequently was not a valid one. It may be well to observe here that the respondent's duty to recognize orders made upon him would not necessarily depend on the legal title of the superintendents. The important question on application for mandamus to compel him to pay must be rather upon the actual *status* of the makers of the orders and the attitude of the general public towards them, and the inquiry here concerning the validity of the appointment is not to make the event of the application turn upon the result of that inquiry.

The appointment is considered, not to try the right to office, but because the question is inseparably connected with the question of the position in fact of the appointees.

As we have seen, the appointment was not authorized, and unless it appears that notwithstanding the want of title Craddock and Williams actually got possession and were generally reputed to be superintendents, and hence were officers *de facto*, this application cannot be sustained.

Now, if Hayner and Huntington, who were lawfully in office, have never yielded, but have held on and continued to act, then Craddock and Williams have never got posses-sion and cannot be regarded as officers *de facto*.

The office of superintendent is single, and it is legally impossible that it should be occupied by two at the same

time. The relator's case in this connection is, that Craddock and Williams qualified, and that the supervisors recognized them at once as lawful officers, and that they assumed to act in the single instance of making the order now in question, and that relator, as third superintendent, with an undisputed title, acted with them on that occasion and so recognized their right.

As the supervisors acted without authority in making the appointment, their immediate recognition of the appointment as one to be respected cannot be regarded as of any importance. They merely attributed validity to their own invalid act. The fact of making the order in question can scarcely be urged as something helping to show authority to make it, and the circumstance that relator joined is of small consequence to show that Craddock and Williams were in and reputed to be officers. He was a party to the controversy which caused the attempted change, and desired that Craddock and Williams should hold. He believed they were entitled and sided with them. This is not mentioned as any thing improper, but as a fact giving color to his acceptance of Craddock and Williams as colleagues or co-superintendents.

As relator he does not claim that those gentlemen actually got possession of the places or were generally reputed to be superintendents.

On the other hand, however, the answer, which for the purpose of this hearing must be taken to be true, explicitly avers that Hayner and Huntington have retained the files and records, and have refused to surrender them to Craddock and Williams, and have constantly denied the right of the supervisors to make the removal, and have continued to act and are now acting as superintendents.

The effect of the statements in the answer is, that Hayner and Huntington have never yielded possession, and that Craddock and Williams have never obtained it, and the effect of the whole showing is, that the latter gentlemen have never been superintendents by general repute, have never been in

a course of acting as superintendents, with general acquiescence in their right to act so.

It does not appear, therefore, that the facts existed which made it the legal duty of the respondent to pay the order in question, and as a consequence the writ must be denied.

We give no opinion as to the correctness of the action had in regard to purchasing the farm.

The other Justices concurred.