## IN THE MATTER OF APPLICATION OF ORESTES CLEVELAND, MAYOR OF JERSEY CITY.

A statute authorized the mayors of the respective cities to appoint, if such grant of power should have been sanctioned by the people, to municipal office, with a further provision that if a controversy should arise between the mayor's appointees and the old incumbents with respect to the title to the offices, such controversy should, on application, be decided in a summary way, by the chief justice, to the extent of designating which persons should execute the offices respectively during the pending of the controversy. *Held*, that the function thus assigned to the chief justice was a judicial one, but that such power could not be vested in that officer, as the jurisdiction touching the right to public office was lodged in the Supreme Court, and could not be legislatively alienated; *further held*, that if the power in question was to be regarded as executive, it could not be imparted to a judicial officer, under the constitution of this state.

---

Under the supplement to an act entitled "An act concerning the government of cities of this state," approved April 6th, 1889, which supplement was approved April 19th, 1889, it was enacted that whenever there shall be instituted or commenced any action or proceeding, at law or otherwise,

to try or determine or affect the title to office, or the powers, privileges or rights of any person appointed under the provisions of the act of April 6th, 1889, that the chief justice of the Supreme Court should, upon application being made to him for that purpose by any mayor, appoint a special term of the Supreme Court, to be held within thirty days of such application, for the purpose of hearing and determining such action or proceeding. Section 3 of the said supplement provided that upon application being made to him for a special term as aforesaid, the chief justice should summarily determine and direct, by an order to be entered for that purpose, which of the persons claiming such office shall discharge the duties of the offices affected by the act during the pendency of the proceedings.

This was an application for such a determination, made by the mayor of the city of Jersey City.

For the application, *W. D. Edwards* and *Leon Abbett.*

*Contra, Gilbert Collins.*

BEASLEY, CHIEF JUSTICE.    By an act of last winter the legislature offered for acceptance to the several cities of the state certain modifications of their respective charters, the most important of which was an authority given to the mayors to fill, by their appointments, all the principal municipal offices.

This law, before going any where into effect, was to be accepted by the popular vote, and it appears that it has been so accepted in Jersey City, and that the mayor of that place has appointed certain persons municipal officers.

By a supplement to this act it was provided that " whenever there should be instituted or commenced any action or proceeding, at law or otherwise, to try or determine the title to office derived from one of the mayors of said cities, the chief justice of the Supreme Court should, upon application by such mayor, appoint a special term of said court, to be held

within thirty days, for the hearing and determining of such action or proceeding, and that such dispute or controversy should be heard and determined at such special term." This supplement further provides for the bringing in the necessary parties, and for the formation of the requisite issues, so as to insure a speedy determination.

Such a controversy as that above indicated having arisen in Jersey City, the mayor of that place applied to me to convoke the judges of the Supreme Court in special term for its immediate determination. This step was taken.

To the proceedings reaching this point no objection has been interposed.

The litigation at present pending originated in the attempt to put in force the scheme contained in section 3 of the supplement just mentioned, and which section is in these words, viz. : " That upon application being made to him for the appointment of a special term as aforesaid, the chief justice shall summarily determine and direct, by an order to be entered for that purpose, which of the persons claiming such office shall discharge the duties of the offices affected by the act to which this is a supplement, during the pendency of any action or proceeding commenced as aforesaid."

The mayor of Jersey City now applies to me to designate, by the power thus conferred, the persons who shall exercise these city offices during the pendency of the contest respecting the title to them. The parties interested have been before me, and I have been urged by the one side to designate, for the purpose just referred to, the new appointees of the mayor, and on the other side, to select the incumbents under the old charter.

At the threshold of the inquiry thus presented, the question presses as to the nature of the power that I am thus invoked to exercise. Is it a judicial or is it an executive power? The statute says the chief justice is summarily to determine, but it does not say how such determination is to be made, or by what standard. Am I required to ascertain in which set of these contestants the legal title to the offices in question resides, and

upon that basis to direct that such persons as have thus been found to be officers *de jure* shall exercise the duties of such offices *ad interim?* At the argument, the counsel on both sides took it for granted that, to a certain extent, this would form the ground of the decision that I am enjoined to render. Upon the theory that I was sitting judicially, by common consent the proceedings fell into a juridical train; the parties have been summoned, they have taken testimony, and they have been heard by counsel. It is true that it was postulated by both sides that by force of this statutory commission I was not authorized or capacitated to decide the question whether this principal act was or was not constitutional; while, at the same time, it seemed to be conceded that the inquiry as to the legality of the submission of the statute to the popular vote was open to discussion and decision. But I am unable to discriminate, with respect to the right of judicature, between these two questions. The right to adjudge whether an act of the legislature has been vitalized by the popular vote, is as much a judicial function as would be a decision touching the competency of the law making power to create the act itself. It would seem to be undeniable that I have the legal capacity to decide, by virtue of this statute, both of these questions, or neither of them.

Upon full reflection, my deduction is, that it was the legislative design to lay upon me, in this matter, a judicial and not an executive duty. My interpretation of this statutory injunction is, that I am required to ascertain which of these classes of persons have been legally chosen, and to direct that such persons shall exercise respectively the duties of the offices *ad interim*. And this construction is much strengthened by the consideration of the improbability of the supposition that the legislature designed to call upon me to perform, in my official character, a purely executive duty of the kind in question. If the choice of persons in this proceeding was not to depend on their legal titles, the act of selection was to be simply discretionary; and it is plain, from the very presence of this provision, that it was anticipated that a fervid struggle for the

possession of these offices was imminent. Under such circumstances it is, therefore, with the utmost confidence, that I reject the idea that it was intended that, as the representative of the judiciary of the state, I should enter that political arena in the character of distributor of the prizes in contest. No judge in this state has ever been seen in such a position, and it is safe to say that no judge ever will be. It has been the invariable policy of a long train of legislatures to manifest in all conceivable ways their respect for the judicial officers of the state, and all law makers have, at all times, carefully abstained from placing upon them any duty, the performance of which would tend, in any degree, to deprive them of the confidence of the people. Consequently, I stand upon safe ground when I assume that this traditional and wise policy was not, in this instance, intended to be discarded, and that it was not, therefore, the purpose to ask me to assume a duty which no self-respecting judge could perform.

My conclusion is, that the function to be discharged by me, as thus legislatively prescribed, is to decide in what persons the legal title to these offices is vested, and, by that measure, to direct who, for the time being, shall exercise their duties. The function thus delineated is plainly a judicial one.

Viewing the matter, then, from this standpoint, it appears to me entirely evident that I cannot exercise the power thus attempted to be conferred, inasmuch as such a power is not one that can be granted by the legislature.

The right to adjudicate as to the constitutionality of legislation; as to the legality of an alleged acceptance of a statute by a popular vote; as to the efficacy of a particular method of submission of a law to such vote; as to the title to public office, is a power resident immemorially in the highest courts of the state, and such right is not alienable at the legislative will. This jurisdiction is fixed in these tribunals by the constitution, and must remain so fixed until that fundamental instrument be modified. Sitting in the character of chief justice I can no more, even though acting under a legislative sanction, decide efficaciously with respect to a person's title to

his office than I can similarly decide with respect to the title to his land. I know of no way in which a person who is colorably and peaceably in possession of a public office can be dispossessed or ousted from it except by the writ of *quo warranto*, or by some mode of proceeding that is its substantial equivalent, and that process is, and always has been, one of the prerogative writs of the Supreme Court, and which, consequently, except as to form, is absolutely beyond legislative control. Nor can the cognizance which the Supreme Court, by means of this procedure, exercises over the title to public office, be imparted by the legislature, either in whole or in part, to an individual or to any other tribunal.

The consequence is, that if I were to attempt to adjudicate touching the titles to these offices now in question, I should do so with the conviction that I was simply arrogating to myself a prerogative of the Supreme Court of the state of a high and indefeasible character.

The doctrine of the inviolability of the jurisdiction of our constitutional courts has been so frequently and fully elucidated in our judicial decisions, and is so completely established, that all citation of authority on the subject seems to me to be obviously superfluous.

My conclusion is, that the power conferred is a judicial one, belonging inalienably to the Supreme Court, and, therefore, that the attempted grant of it to me is a nullity.

In order to avoid illegitimate inferences, from what I have said above, it is proper for me to declare, that the result would not have been altered if I had concluded that the power that the statute thus professes to confer had been one of a purely executive nature. Regarding it in this light, I should not have felt at liberty to execute it, inasmuch as, in my opinion, an executive authority of this nature cannot be vested in a judicial officer so long as the state constitution remains what it is. The subject is regulated by article 3 of that instrument, which is in these words: " The powers of the government shall be divided into three distinct departments—the legislative, executive and judicial ; and no person or persons belong-

ing to or exercising one of these departments, shall exercise any of the powers properly belonging to either of the others, except as herein expressly provided."

It will be observed that each of the three departments here designated is excluded, not simply from the exercise of the powers conferred in express terms by the constitution itself on either of the others, but is prohibited from using "any of the *powers properly belonging to either of the others."*

My construction of this broad description of the prohibited power, as it applies to the judiciary, is, that it forbids that department to use any of these authorities which in their nature are either legislative or executive, because such authorities, in a theoretical and abstract sense, " properly belong" to the two last named departments respectively. This clause is, of course, to be read in the light of the ancient inherent faculties and incidents of the governmental departments to which it relates, and it could not, therefore, properly be construed so as to prevent the judicial tribunals from appointing that class of officials that are assistants of the courts in the administration of the law, such as referees, auditors, masters in chancery, and the like. But that it does prevent the vesting the prerogative to fill public offices, unconnected with the courts, and the judicial function, I see no reason whatever to doubt.

This was the effect given to a similar clause in the constitution of the State of Massachusetts, by the Supreme Court of that commonwealth. The case referred to is that of *Case of Supervisors of Election,* and is reported 114 *Mass.* 247. The facts were these : The legislature had directed the Supreme Court to appoint certain supervisors of election, and the question was, whether such power could be properly conferred. The decision and its grounds may be thus briefly stated : " The people of Massachusetts," says the chief justice, " warned by experience of the inconveniences and dangers arising from the vesting of incompatible powers in the same persons under the royal government while this state was an English province, have made most careful provision for separating the three

great departments of government, and from removing the judiciary, and especially this court, from political influences of every kind, as far as possible." And the conclusion of the court is then announced in these words: "We are unanimously of opinion that the power of appointing such officers cannot be conferred upon the justices of this court without violating the constitution of the commonwealth. We cannot exercise this power as judges, because it is not a judicial function; nor as commissioners, because the constitution does not allow us to hold any such office."

This case is much in point, and expresses that which I deem the true exposition of this class of constitutional provisions.

As I have already said, if, therefore, I had regarded the power granted to be an executive one, I could not have acted under it, as, in my opinion, such an office cannot be held by a judicial officer in the state.

There are a number of other authorities holding the same views as those above expressed, a collection of which will be found in the *Albany Law Journal* for May, 1889, page 350 *et seq.*

From these considerations I feel it to be my duty to decline to execute the authority sought to be conferred upon me by this statute. If I had entertained a doubt with regard to the impropriety of judicial participation in this political controversy, or with regard to the impotency of this legislation to invest me with the authority in question, it may be that, from a desire to manifest as far as possible my great respect for the law making department of the state, I should have endeavored, as a citizen, to help put in force and carry into effect this legislative scheme; but to do this with my present convictions is altogether out of the question, as I could not help regarding such action on my part as an attempt to usurp an authority that I could not exercise without official degradation.

In conclusion, I wish to say that the solicitude naturally incident to a non-compliance with a legislative mandate is, in this instance, in a large degree, alleviated by the reflection that if I had filled the offices in question, such act would have

been apparently destitute of all beneficial effect. With few exceptions, these public positions are now filled by the old incumbents. To have awarded the legal title *ad interim* to them would not have been of the least supposable value. And, on the other hand, if the temporary right of possession had been declared to be in the appointees of the mayor, how would the right thus conferred have been enforced? The old incumbents would have paid no attention to such a decision, for their contention is that I have no power to act in the case, as the law itself is void, because unconstitutional. It is obvious, therefore, that the appointees of the mayor could have effectuated their supposed *ad interim* appointment only by a resort to a writ of *quo warranto,* and it seems quite certain that long before the termination of such procedure a decision will have been rendered between these litigants, settling the entire controversy, by force of the summary methods provided for in the statute.

If the parties interested shall be dissatisfied with my conclusions, I will aid them, as far as practicable, in placing the matter before the proper tribunal for review.