GEORGE C. LAWRENCE v JAMES HANLEY, SHERIFF OF WAYNE COUNTY.

*Elections—Vacancy—County officer—Appointment by Governor—Special election—Mandamus—Title to office.*

1. The death of a person elected to the office of auditor of Wayne county before he has qualified, and before the expiration of the term of office of the incumbent, creates no vacancy that the Governor can fill by appointment, but the full term must be filled by a special election under How. Stat. §§ 138 (subd. 3), 141; the case being ruled by *People v. Lord*, 9 Mich. 227.
2. Title to office will not usually be settled in *mandamus* proceedings, but when a person in office *de jure et de facto* is interfered with by one whose lack of title is plain under adjudicated cases in our own courts, it is not only proper, but best, to settle the question by *mandamus*.

*Mandamus.* Submitted January 20 and 21, 1891. Granted January 23, 1891.

Relator applied for *mandamus* to compel the respondent to return to the relator, as chairman of the board of auditors of Wayne county, the books belonging to said board, and for other relief. The facts are stated in the opinion.

*Henry M. Duffield,* for relator.

*William J. Gray, Fred A. Baker,* and *William S. Sheeran,* for respondent.

MORSE, J.   The real controversy in this case is the conflicting claims of two persons to the office of county auditor of Wayne county.

The admitted facts are as follows:   Charles P. Collins was a duly-elected county auditor, and the regular term of his office would have expired on December 31, 1890. His successor was by the statute to be elected on November 4, 1890, at the general election.   Candidates were nominated by the different political parties, and Joseph Nagel was duly elected as such successor.   Before the expiration of Collins' term, and before Nagel had taken any steps to qualify, Nagel died, on December 9, 1890. On January 6, 1891, the Governor appointed Henry J. A. Leteker to fill the supposed vacancy caused by the death of Nagel.   Collins, under legal advice, and claiming that there was no vacancy in the office that could be filled by appointment of the Governor, and that he held the office under the laws of this State until his successor was duly elected and qualified, refused to vacate his office.

There are three county auditors of Wayne county, who compose the board of county auditors.   Each is chosen for the full term of three years.   At each biennial general fall election one is chosen, and, in the years when no such election is held, one is elected by the board of supervisors of Wayne county.   How. Stat. § 511.   The auditor having the shortest time to serve is chairman of the board of auditors.   How. Stat. § 512.   The auditors elected as above provided shall hold their offices for the term of three years, and until their successors shall be elected and qualified.   How. Stat. § 511.

At the time of Leteker's appointment, the board of auditors was unquestionably composed of George C. Lawrence, the relator, chairman, and James Holihan, whose term would expire on December 31, 1892, and Charles P. Collins, holding over until his successor was elected and qualified. Upon the appointment of Leteker this controversy commenced. Leteker demanded the office of Collins, who refused to surrender it. Holihan recognized Leteker, and Lawrence sided with Collins, and at once there were two boards of auditors in session; Holihan and Leteker on one side, and Lawrence and Collins on the other. The sheriff of Wayne county, the respondent, recognized Holihan and Leteker, and the police department recognized Lawrence and Collins.

It is claimed by the relator that the respondent took the books of the board by force away from Lawrence, the chairman of the board, and his petition prays for an order directing the respondent to return the books to the relator, and to no one else, and that he be restrained from interfering with the contest for said office of auditor between said Collins and Leteker, and do recognize the relator, Lawrence, and Holihan and Collins as the board of county auditors, to the exclusion of Leteker.

The sheriff answers, in substance, denying that Collins is a member of such board, and that the relator, as chairman of said board, is entitled to the books in question, but avers that the same belong to the custody of the board. He claims that on the day he took possession of the books he was summoned to the auditors' office by Holihan and Leteker, a majority of said board, to furnish them assistance in maintaining order in said office. He found Collins, Lawrence, Holihan, and Leteker sitting at the desk in said office. He directed two of his deputies to remain in the office, with instructions that they were

there to preserve order, and for no other purpose, and thereupon left the room. Shortly afterwards, as he is informed and believes, Collins departed from the office, leaving Leteker in peaceable possession of the same. About 2 o'clock in the afternoon of the same day he was again summoned to the office to "maintain order and preserve the peace," and, going there, found Collins, Leteker, Holihan, and Lawrence present, together with the attorney of said Collins, who sent for policemen, who also soon appeared to the number of half a dozen. His answer as to what took place there is not material to this issue, except in so far as it shows how the respondent became possessed of the books. He says that the relator, Lawrence, had changed the combination of the safe for the purpose of excluding Holihan and Leteker therefrom, and undertook to place the books therein beyond the reach of said Holihan and Leteker. Holihan attempted to resist such disposition of the books, and he and Lawrence became engaged in a scuffle for the possession of them. Fearing a row and danger to the persons of said Holihan and Lawrence, the respondent took the books away from said Lawrence, and carried them to his own office, in the same building, and placed them in his safe for safe-keeping. He says he returned them the next morning "to the said board," but he does not say which board; but it appears further along in his answer that he returned them to Holihan and Leteker, and that every night since he has locked them up in his safe, at the request of Holihan and Leteker, and returned such books to them each morning.

It further appears in the case that ever since there have been two boards attempting to exercise the duties of county auditors; that the treasurer of the county recognizes Holihan and Leteker as such board, and that

they are drawing orders upon the county treasury as such board, but that the depository of the funds, provided and designated by law, refuses to honor the orders or warrants of said Holihan and Leteker, unless the same are counter-signed by Lawrence as chairman, and Lawrence refuses so to countersign them, so that no money can be drawn from the funds of the county to pay the daily expenses of said county.

It is always an unseemly spectacle when one undertakes to obtain an office by force, and another resists such attempted taking. It is not only demoralizing to the public service, but it creates disorder, riot, and often bloodshed. It can never be countenanced by the courts. And it is not for the sheriff or the police force to take sides in such a contest as they did here. It is evident that the sheriff went beyond his duties as a peace-officer, and used the authority of his high office to install Leteker into the office of county auditor by giving him possession of the books, which, when taken by the sheriff, were lawfully in the possession of Lawrence, as against the sheriff, and all other persons except the legally qualified members of the board of county auditors. The claim that Collins was ever legally or peaceably dis-possessed of the office is untenable. He never abandoned his office, and the mere fact that he left the room for a little while could give Mr. Leteker no new or added rights in the premises.

This would dispose of the matter at present before us, but it does not settle the question really in issue. We deem it for the public good, the case being to us so clear, to decide here and now the question of the right to the office as between Collins and Leteker. This is not usual in *mandamus* proceedings, *quo warranto* being in most cases the most appropriate proceeding to test the right to hold an office; but the exigencies of the case, as we view

it, and the public interest, demand that the question shall be speedily determined, which cannot be done by *quo warranto*. And when a person in office *de jure et de facto* is interfered with, by one whose lack of title is plain and governed by adjudicated cases in our own courts, it is not only proper, but best, to settle the question by *mandamus*. See *State v. Mayor, etc., of Atlantic City*, 19 Atl. Rep. 780.

We think the title to this office is clearly ruled by *People v. Lord*, 9 Mich. 227. There was no vacancy occasioned by the death of Nagel that the Governor could fill by appointment. The statute in relation to the board of auditors clearly provides that each member elected shall hold his office three years, *and until his successor shall be elected and qualified*. It is not denied that Collins was a county auditor *de jure* as well as *de facto* until January 6, 1891, when Letcker received his commission from the Governor, and he was county auditor *de jure* because his successor had not been elected and qualified. In such a case as this, How. Stat. § 138, clearly provides for the choice of a successor to Collins by a special election to be called by the board of supervisors of Wayne county.

"When the right of office of a person elected to any of the aforesaid district or county officers shall cease before the commencement of the term of service for which he shall have been elected,"—which is Nagel's case,—the term is to be filled by a special election. See paragraph 3, § 138, How. Stat.; section 141, How. Stat. The Legislature in 1873 passed an act authorizing the Governor—

"To appoint a suitable person, being a resident of Wayne county, to fill any vacancy now existing, or which may hereafter occur, in the office of auditor of said Wayne county." 3 Laws of 1873, p. 1.

But this is not such a vacancy as is contemplated by this statute. This is a case where the full term is to be

supplied, because the person elected to fill such term has died before his term commenced. It is the plain intention of all the statutes, taken together, that this office shall be an elective one, and the Governor is not authorized to fill it for a full term. This must be done in such a case as this by a special election.

In the case of *People v. Lord*, 9 Mich. 227, the Constitution provided that "when a vacancy occurs in the office of judge of the Supreme, circuit, or probate court it shall be filled by appointment of the Governor." In that case at the general election held in November, 1860, Oscar F. North, then judge of probate of Oakland county, whose term would expire December 31, 1860, was elected his own successor. November 22, 1860, North died, and the Governor, four days later, appointed Jacob Van Valkenburgh to fill the vacancy. January 1, 1861, the Governor, acting upon the supposition that the appointment of Van Valkenburgh ceased on the termination of North's term, December 31, 1860, appointed Henry W. Lord to fill the same, who entered upon the duties of his office, claiming to hold the same for the full term for which North was re-elected. The board of supervisors called a special election to fill the office, and at such special election Henry C. Andrews was elected judge of probate to fill out the said term. The Constitution provides that the judge of probate shall be elected and hold his office for four years, and "until a successor is elected and qualified." In case of vacancy, the Governor is to appoint a person to continue "until a successor is elected and qualified. When elected, such successor shall hold his office the residue of the unexpired term." Article 6, § 14. It was held that Van Valkenburgh, who stood in the place of North, the deceased judge, would hold the office until his successor was elected and qualified, and

that his term did not expire on the 31st day of December, 1860, and that Lord's appointment was therefore void. And it was also held that it was not a technical vacancy, but a case where a new election was expressly provided for by paragraph 3, § 138, How. Stat., heretofore quoted; that the election in the fall had fallen through by the death of the person elected before the time arrived when he could qualify and take his office; and that the appointment of Lord was made when Van Valkenburgh had an existing title to the office, and therefore void. We can see no distinction between that case and this that at all changes, or militates against, the principle there enunciated. Collins had an existing title to the office of auditor at the time of Leteker's appointment,—a title that could only be extinguished by the *election* and qualification of a successor. Leteker's appointment was therefore void.

It is claimed that the principle laid down in the Lord case is not to be followed in this case, because it is *obiter dictum,* for the reason that a special election had been held, and therefore Andrews was clearly entitled to the office, whether Lord had been legally appointed or not; and an argument is made for the purpose of showing that the construction of the Constitution and statutes in that case by Mr. Justice CAMPBELL was not the proper and legal one. But we think that the construction was correct, and in harmony not only with the Constitution and laws, but with the policy of our State, which from the beginning has inclined most strongly in favor of elections by the people of local officers, as against the appointment of the same by the Governor or the Legislature.

It is also said that we ought not to pass upon the title of Mr. Leteker, because he is not here before us. But the respondent admits that he has been acting under

the direction of Holihan and Leteker, upon the assumption that Leteker is the lawful incumbent of the office, and Leteker is really the respondent here, the sheriff being only a nominal party.

It is also argued that the relator could not be the chairman, because he was appointed by the Governor in July, 1889, to fill a vacancy occasioned by the death of William C. Mahoney, and he is therefore merely a provisional auditor, without a regular term, and Mr. Holihan, as the next auditor, is legally the chairman. The question whether the Governor could appoint Lawrence to fill the vacancy beyond the next general election after such appointment is not before us in this case, because under his appointment he is auditor at least until his successor is elected and qualified, and he is also by law the chairman of the board, because his term of office soonest expires, such term being considered as the statutory term of the person elected whose place he is filling by appointment.

It follows that Mr. Leteker has no standing as a county auditor, and that Mr. Collins continues in such office until his successor is duly elected and qualified as the law directs. The writ will therefore issue as prayed, with costs against the respondent.

The other Justices concurred