---

(Common Pleas Court, Hamilton Co., O.)
JOHN J. SULLIVAN v. HENRY HAACKE, SAMUEL MILLER, JOSEPH F. MEADER AND E. G. SCHRIEFER.

One whose original entry thereto was lawful, and who is in possession of an office, is not divested of possession by a forcible expulsion from his chair at the hands of an adverse claimant, and this, event though the claimant may have title.

The one in possession, if in good faith disputing the claimant's title, will be protected in his possession against interference by the claimant until the question of title is determined in an action at law.

WRIGHT, J.

It is essential to the comprehension of the questions here involved to understand at the out-set the nature of the action, for the nature of an action in equity prescribes limits beyond which a court lacks jurisdiction to extend its powers for the decision and determination of questions not triable in that proceeding.

The action at bar is peculiarly a proceeding in injunction, strictly a proceeding in equity.

The question of title to public office, as conceded by the learned counsel engaged, can not be tried in an action in equity, can not be tried in a proceeding in injunction, but can be determined only in a strict action at law, to-wit: The purely legal action of quo warranto. Therefore, the question: "Who has title to the office of supervisor?" can not be adjudicated in the proceeding now at bar. With this point of well settled law thus in mind, let us proceed to the fuller consideration of the case. The action is instituted by John J. Sullivan against Henry Haacke, Samuel Miller, Joseph F. Meader, and E. G. Schriefer; the petition avers, among other things, that plaintiff was, about the 1st of April, 1897, duly appointed a member of the Board of Supervisors of the city of Cincinnati, entered into the office and has ever since been in possession thereof, and is now in possession; that the defendants threaten to, and will attempt by force, to take possession of the office, and by force exclude him therefrom; the petition prays for an injunction restraining the defendants from in any wise interfering with the possession by plaintiff of the said office until the defendants shall establish their title to said office in an action at law. Thus the action shows itself to be that, familiar to equity practice, wherein an individual in possession of an office seeks to restrain another who claims the office from by

force and violence, ejecting him, instead of resorting to the dignified, peaceful, and orderly methods provided by law for gaining possession.

The answer of the defendants, among other things, denies that the plaintiff was, at the time of filing his petition, in possession of the office.

There is no dispute about the testimony bearing upon this point, and by it the following facts are shown: Upon the morning of September 22, 1897, the Board of Supervisors, of which the plaintiff was a member, sat in session within its office adjoining the court house; a policeman appeared and delivered to the plaintiff a written notice from the mayor of Cincinnati, advising him that he had that day been removed from office; thereupon the defendants entered, attended by a body of police, and each displayed to the presiding officer of the board, a document, (each document identical with the other, except in point of names of individuals), one of which read:

"September 22, 1897.

"By virtue of the authority vested in me by the state of Ohio, I do hereby appoint Henry Haacke a member of the Board of Supervisors, of the city of Cincinnati, to fill the unexpired term of John J. Sullivan, this day removed by me from office.            GUSTAV TAFEL."

The defendants thereupon made claim to the office, which the plaintiff disputed, and refused to surrender possession; thereupon he was violently set upon by three of the aforementioned police, and, although vigorously protesting, was forcibly dragged from his chair, which was immediately occupied by one of the defendants; the plaintiff, being then unhanded, resumed position at the official table. Meanwhile, the plaintiff's counsel commenced this proceeding; an injunction was shortly served upon the defendants, whereupon they withdrew.

Upon the point of who had possession of the office after this interruption and diversion, and upon the point of whether by it the plaintiff had been divested of possession, it is important to consider that title to public office, and installation into public office are not synonymous terms. Right and title to office is one thing, possession of an office is a different thing; an individual may be in possession of an office without legal title, and an individual may have legal title to an office and be not yet in possession; one is in possession, and the other is not; and the question comes, if one who has title is not yet installed, how can he obtain possession from his predecessor who is in? If the predecessor voluntarily surrender possession, well and good, the one entitled may take it up; but if the predecessor refuse to surrender possession, what then? Shall the claimant summon together his retainers, and by

weight of superior numbers and by force of physical powers, ride himself in, regardless of law, at a breach of the public peace, and in contempt of the provisions of the law? And even if by such methods he succeed in ejecting the person of the other, and in gaining physical dominion over buildings and paraphernalia, does this possess him of the franchise of the office?

The peaceful and orderly processes of the law furnish by quo warranto, such sure and speedy means of dispossessing a wrongful incumbent from office, that it has not frequently seemed to claimants to be necessary to resort to other methods; indeed, so rarely have violent methods of dispossessing been undertaken, that communities are not familiar with the spectacle, yet an analogy, homely, perhaps, but nevertheless forceful, is familiar to every observer of the affairs of men; it is in a hold-over by tenants after the expiration of a tenancy of real estate. Here the landlord has the title, in addition has the right of possession, and the tenant holds possession without right or title, and wrongfully, yet it is universally known and understood, that the rightful owner may not by force eject the wrongful holder, but is put to his action in forcible entry and detainer, to gain possession; be it even a single apartment of unworthy and insignificant pretensions, yet, does the law command the rightful owner to abstain from breach of the public peace and compel him to his action at law.

Such being the law for cases wherein the possession of a mere private apartment is involved, can the point be doubtful in cases where possession of a public office of dignified proportions and of weighty importance is concerned?

And in this regard it is helpful to observe that a public office is a franchise, not a mere tangible combination of rooms, tables, books and papers; and he in whom the law once vests this franchise of office, continues to possess it until he voluntarily surrenders it, or until he is divested by process of law; the franchise of office does not vest in his successor until that successor shall have acquired both title to the office and has been installed into possession of the office. If the franchise be in a man, as it was in the plaintiff, upon the 22nd day of September, The mere casting of him, bodily, out through a door-way, does not divest him of it; and it is immaterial what door-way he may be put through, whether that of his office, or another; to cast a man out of the house, does not cast him out of his office If an individual be a public officer, he is none the less such by reason that policemen have laid hands of violence upon him. Personal violence may wrest from him the physical possession of articles of tangible property, but can not wrest from him

the possession of the intangible franchise of office: violence may take his life, but can not take his office. A claimant to public office, even though he have title, can not, through the exercise of physical force and personal violence, divest possession from his predecessor. And while the methods, which upon the 22nd of September, seemed to the defendants fit to be employed, were undoubtedly effective in wresting from the plaintiff a certain chair in which he happened to be reclining, their potency ended with that achievement; they did not thereby deprive him of the possession of the office which up to that moment he had been holding; the ceremony which to the defendants seemed meet and appropriate for the occasion of their introduction into public office was effective in securing seats in certain chairs which had lately before, been occupied by other gentlemen, but was effective no further; the accomplishment of such dexterous feats is not of ponderable significance to courts of equity; for to them the possession of a public office seems to depend upon weightier considerations; the means employed did not secure to the defendants, or either of them, possession of the public office.

The court therefore finds, that at the time of the commencement of this action, the plaintiff was in possession of the office, and that possession thereof, has never been secured by the defendants or either of them.

The learned and distinguished counsel for defendants, urge that the plaintiff has been removed from office by the mayor of Cincinnati, and that therefore he was deprived of possession as well as deprived of title, and was altogether out. The fallacy of this argument is in its failure to distinguish between the effect of finding by the mayor, and the execution of that finding. A mayor's finding, removing an incumbent from office and appointing a successor, may vest title to office in the appointee, but is the finding self-executory? Clearly not, for as a physical fact, the plaintiff was in actual possession of the office, when the defendants appeared upon the scene, and while the mayor was present, and testified as a witness at the hearing. I heard no claim made by him or any one in his behalf, that he had undertaken to execute his finding and order through the power of the city police. If this was the plan of the "coup d'etat," the responsibility of it has not been assumed within my hearing. If the finding and appointment of the mayor are conceded to be valid, yet they are unexecuted, and can be executed only through the process of the courts, exerted in an action of quo warranto.

In both oral and written argument, the learned counsel for defendants, conceded that the title to the office can not be tried in this proceeding. I quote from their brief as follows: "And we agree with counsel for plaintiff in this case, that the judgment of the court upon their motion for an injunction will not determine title, nor be a bar, to any further proceeding between the two 'boards.'" How futile then, to urge the court to adjudge that the plaintiff has been removed. Can the court so adjudge without first trying the question of title and determining that the title is in the defendant? Clearly no; to find that the plaintiff has been removed, necessarily decides the question of title, and this can not be undertaken here.

If the specifications filed with the mayor were valid charges against plaintiff, of misconduct, or of neglect of duty, and if the mayor, after a hearing removed him, then I take it that the mayor's judgment upon the point is final, and that courts can make no inquiry whatsoever, into the sufficiency of the testimony which he heard; but if the specifications did not amount to charges of misconduct or neglect, in this event, an order of removal would be void; wherefore, it is impossible to say that the plaintiff has been removed without determining that the charges were valid, and, therefore, that the proceedings which were had before the mayor divested him of title and vested title in a successor. It is plain enough, that this is trying the question of title to the office, which can not be done in an injunction proceeding.

In this, an action in equity, the court is without jurisdiction to render a judgment, installing one or the other board, in office. If the injunction heretofore issued should be dissolved, the decree could not award possession of the office to defendants, even though they were entitled, but of necessity would leave the parties in the antagonistic position which they occupied at the time this action was commenced. The spectacle of claimants to high and important public office, charging themselves at fisticuffs over who shall have possession, and this at the very portals of the public courts, is not in harmony with the policy of the law, and is not one whereon a peace-loving, law-abiding public, delights to gaze; and I am bound to say, that it seems to me that the courts, in the name of the public, for the preservation of the public peace, and in vindication of public dignity, will command peace and obedience to the orderly forms of law.

The injunction will be continued, restraining the defendants from forcibly interfering with the plaintiff's possession of the office, until such time as they are able to establish their right and secure possession through an action at law. As to whether they have, or have not, right and title, I express no opinion.

Counsel have presented other questions

with a thoroughness of argument and an exhaustiveness of research which has commanded the just appreciation of the court; but these are secondary to the main question heretofore discussed, and, howsoever determined, would not affect the ultimate conclusion, which, as expressed above, must be adopted.