[S. F. No. 5507. In Bank.—September 8, 1911.]

ARTHUR H. BARENDT, Appellant, v. P. H. McCARTHY, Mayor of the City and County of San Francisco et al., Respondents.

PUBLIC OFFICE—TITLE CANNOT BE TRIED IN INJUNCTION.—Title to public office may not be tried in a suit for an injunction.

ID.—BOARD OF HEALTH OF SAN FRANCISCO—UNLAWFUL REMOVAL—POSSESSION OF OFFICE TAKEN BY SUCCESSOR—INJUNCTION TO BE RESTORED TO POSSESSION.—A member of the board of health of the city and county of San Francisco, who claims to have been unlaw-

fully removed from such office, the actual possession of which has been taken through force or trickery by the person appointed by the mayor as his successor, and who has entered upon and is performing the functions of the office, is not entitled, pending a litigation in the nature of a *quo warranto* to determine the title to the office, to an injunction restoring him to and protecting him in the actual possession of the office.

ID.—DE FACTO OFFICER—COLOR OF AUTHORITY.—The person so appointed as successor, having color of authority, possession of the *indicia* of office, and performing the functions thereof, is a *de facto* officer.

ID.—INJUNCTION DOES NOT LIE AGAINST DE FACTO OFFICER—TRUE HOLDER OUSTED BY USURPER—PEACEABLE POSSESSION BY USURPER. —If one is a *de facto* officer, that is, in actual, peaceable possession of the office, claiming the right to hold it and regularly performing its duties, his title cannot be assailed by a suit in equity to enjoin him from so doing, nor will an injunction issue upon a suit by the true holder of the title to an office to restrain the usurper and others from removing the true holder, where it appears that the true holder was ousted and the usurper was in peaceable and undisturbed possession at the time suit is begun and for four days next preceding.

ID.—REMEDIES OF DE JURE OUSTED OFFICER.—Neither the *de jure* ousted officer nor the people are without civil remedies under such circumstances. Such officer may obtain his salary, in a *mandamus* proceeding against the auditor, in which the title to the office may be put in issue and tried, as was decided in the case of *Bannerman* v. *Boyle, ante,* p. 197, or he may apply for leave to sue in *quo warranto,* which it must be assumed would be granted in all proper cases, thus giving a remedy for both the officer and the people.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

Barclay Henley, and Arthur H. Barendt, *in pro. per.,* for Appellant.

Frank J. Murphy, for Respondent John S. Martin.

Cleveland L. Dam, George Appell, and A. L. O'Grady, for Respondents P. H. McCarthy and Arthur M. Sharp.

Percy V. Long, City Attorney, and F. J. English, Assistant City Attorney, *Amici Curiæ,* on petition for rehearing.

MELVIN, J.—This is an appeal from a judgment in favor of the defendants. The complaint alleged that Arthur H. Barendt was a member of the board of health of the city and county of San Francisco duly appointed; that the mayor and chief of police of that city and county had, in the absence of the health officer and the members of the board of health, broken into the headquarters of the board and had placed in possession thereof Arthur M. Sharp as a pretended successor of plaintiff and other persons assuming to succeed plaintiff's associates. The complaint further averred that the appointees of the present mayor assumed to hold a meeting as a board of health; that they had organized by electing a president and secretary; and that they pretended to exercise authority over all the departments properly subject to the control of plaintiff and his associates. There was a further averment that defendant P. H. McCarthy claimed a right, as mayor of the city and county of San Francisco, to remove plaintiff from office, and that in the exercise of that asserted authority he had made an order purporting to declare plaintiff's place on the board of health vacated, and to substitute Arthur M. Sharp in his stead. The power and authority of the mayor in the premises was denied and an injunction was prayed restraining defendants from removing or attempting to remove plaintiff from actual posession of his office as a member of the board of health of the city and county of San Francisco.

To this complaint defendants demurred, and thereafter the matter was heard on an order to show cause. At the hearing the following facts appeared by affidavit: On January 28, 1910, Mayor P. H. McCarthy of the city and county of San Francisco, made an order removing Arthur H. Barendt, George B. Somers, William F. Wilson, Thomas W. Huntington, and Joseph E. Cutten, as members of the board of health; immediately notified the board of supervisors of such removal; and furnished said supervisors with a statement of the cause for his action. This statement was entered of record in the proceedings of the said board of supervisors. Among the causes for the removal specified in the statement were acts of plaintiff and his associates in willfully and knowingly appointing to positions in the health department of the said city and county persons not qualified for and not eligible to such positions and willfully and knowingly approving and auditing

the salary demands of the said persons." The mayor then made an order appointing Arthur M. Sharp, Germain Pouchan, Frank J. Klimm, Thomas B. Roche, and Dennis J. Murray, members of the board of health, and certificates of appointment were delivered to said appointees. On January 31, 1910, the holders of the certificates from the mayor went to the office of the board of health, presented their credentials to the chief clerk and demanded entry into the meeting room of the board. Finding the door locked, and being informed that the health officer alone had a key, they secured the services of a locksmith who opened the door for them. No member of the board of health as it was constituted prior to January 31, 1910, was present while the members of the new board were gaining entrance to the meeting room. Four days later the complaint herein was filed.

It is thoroughly settled that title to public office may not be tried in a suit for an injunction. Mr. High, in his work on injunctions, says: (4th ed., sec. 1312) "No principle of the law of injunctions and perhaps no doctrine of equity jurisprudence is more definitely fixed or more clearly established than that courts of equity will not interfere by injunction to determine questions concerning the appointment or election of public officers or their title to office, such questions being of a purely legal nature, and cognizable only by courts of law. A court of equity will not permit itself to be made the forum for determining disputed questions of title to public offices, or for the trial of contested elections, but will in all such cases leave the claimant of the office to pursue the statutory remedy, if there be such, or the common law remedy by proceedings in the nature of a *quo warranto.*" In *White* v. *Berry,* 171 U. S. 377, [18 Sup. Ct. 917, 43 L. Ed. 199], Mr. Justice Harlan, speaking for the supreme court of the United States, quoted approvingly from the opinion in Sawyer's case, 124 U. S., 223, [8 Sup. Ct. 482, 31 L. Ed. 432], as follows: "It is equally well settled that a court of equity has no jurisdiction over the appointment and removal of public officers, whether the power of removal is vested, as well as that of appointment, in executive or administrative boards, or officers, or is intrusted to a judicial tribunal. The jurisdiction to determine the title to a public office belongs exclusively to the courts of law, and is exercised either by *certiorari,* error or

appeal, or by *mandamus,* prohibition, *quo warranto,* or infor-
mation in the nature of a writ of *quo warranto,* according to
the circumstances of the case, and the mode of procedure estab-
lished by common law or by statute. No English case has
been found of a bill for an injunction to restrain the appoint-
ment or removal of a municipal officer. But an information
in the court of chancery for the regulation of Harrow School
within its undoubted jurisdiction over public charities was dis-
missed so far as it sought a removal of governors unlawfully
elected, Sir William Grant saying: 'This court, I apprehend,
has no jurisdiction with regard either to the election or amo-
tion of corporators of any description.' (*Attorney-General* v.
*Clarendon,* 17 Ves. 488, 491.) In the courts of the several
states the power of a court of equity to restrain by injunction
the removal of a municipal officer has been denied in many
well-considered cases,—citing *Tappen* v. *Gray,* 3 Edw. Ch. 450,
reversed by Chancellor Walworth on appeal, 9 Paige, 507, 509,
512, whose decree was affirmed by the court of errors, 7 Hill
259; *Hagner* v. *Heyberger,* 7 Watts. & Serg. 104, [42 Am. Dec.
220]; *Updegraff* v. *Crans,* 47 Pa. St. 103; *Cochran* v. *McCleary,*
22 Iowa 75; *Delahanty* v. *Warner,* 75 Ill. 185, [20 Am. Rep.
237]; *Sheridan* v. *Colvin,* 78 Ill. 237; *Beebe* v. *Robinson,* 52
Ala. 66; and *Moulton* v. *Reid,* 54 Ala. 320." He also quoted
with approval the language of Judge Lurton (who was at that
time a circuit judge), in *Morgan* v. *Nunn,* 84 Fed. 553, to the
effect that "a court of equity will not, by injunction, restrain
an executive officer from making a wrongful removal of a sub-
ordinate appointee, nor restrain the appointment of another."

But while equity will not determine title to public office in
a case of this kind, appellant invokes the rule that the pos-
session of officers *de facto* will be protected by injunction
pending a litigation in the nature of *quo warranto* to determine
their title. He maintains that although he and his associates
are not in physical possession of the books, papers, and meet-
ing-place of the board of health, they are the *de facto* members
of that body and are entitled to be restored to that possession
of which they were deprived by the trickery and intrusion of
the men appointed by Mayor McCarthy. But the mere fact
that possession of the place of business and *indicia* of an office
was obtained by entrance in the absence of former holders,
or even by force when they were present, does not of necessity

entitle those persons thus dispossessed to reinstatement pending the determination of the legal title. (*Scott* v. *Sheehan,* 145 Cal. 691, [79 Pac. 353] ; *Brower* v. *Kantner,* 190 Pa. St. 182, [43 Atl. 7].) In the present case the respondent members of the board of health are in possession of the office, exercising the functions thereof, under color of authority. It is immaterial, for the purposes of this discussion, whether or not the mayor may remove a municipal officer without a hearing, and thus create a vacancy. To decide that question would be determining the title to the office. The membership of the board of health of San Francisco is a "municipal affair." (*People* v. *Williamson,* 135 Cal. 415, [67 Pac. 504], and therefore having proceeded under the provisions of the charter of the city and county of San Francisco the mayor has bestowed upon his appointees a color of title, no matter what might hereafter be determined in a proper action regarding the right of the deposed officers to notice of the charges against them and a hearing thereon. The charter of the city and county of San Francisco vests in the mayor the power to appoint members of the board of health. (Art. X, sec. 1.) The members of the board being appointed by him may be removed for cause. (Art. XVI, sec. 18.) And the mayor seems to have followed the provisions of the charter with reference to notifying the board of supervisors of the cause of removal of an officer, and his statement of such cause seems to have been entered of record in the proceedings of the board in accordance with the charter. (Art. XVI, sec. 20.) Certain it is that the appointees must be recognized as persons acting under commissions issued by the proper authority and as persons conducting the business of the board of health in the usual manner. They have color of authority, possession of the *indicia* of office, and they are serving the public as the board of health, having so served for several days before the appellant sought the intervention of a court of equity. That they are *de facto* officers admits of small doubt.

This is not a case where "two contending boards are simultaneously acting." (*Morton* v. *Broderick,* 118 Cal. 485, [50 Pac. 644].) In such a case title to the office *de jure* draws to it the possession *de facto* which, as was said in the case last cited, "is but a concise expression of the rule that in *mandamus* where conflicting boards of officers are acting simultaneously,

each under a claim of right, since there cannot be two *de facto* boards or officers, that one alone will be recognized as the *de facto* board or officer which is acting at the time under the better apparent legal right." But here, as we have seen, the assertion of the appellant that he is a *de facto* officer is not based upon any claim that he and his associates have performed duties of a board of health since January 31, 1910. The case of *Braidy* v. *Theritt*, 17 Kan. 468, has been cited by appellant as supporting his theory. In that case an officer was granted a writ after he had been out of office thirteen days. An analysis of that case, however, will show that it is really not opposed to the views here expressed. Theritt had been re-elected councilman and had received his certificate. Braidy claimed the same office by appointment from the mayor, but held no certificate. When the latter presented himself at the meeting-place of the council to claim his office, Theritt caused other councilmen to withdraw with him, intending that there should be no quorum for the transaction of business. The office being legislative, Braidy could perform its functions only by participating in a meeting of the legislative body. The court found that prior to Theritt's withdrawal Braidy had not exercised any of the duties of the office; that Theritt's with-drawal from the meeting was only for the purpose of pre-venting a quorum from assembling, not being in any sense an abandonment of his claim to the office; and that Theritt, having the certificate of election, was entitled to be considered still in possession of the office. Braidy, not having performed any of the functions of the office before Theritt's temporary absence, and having no color of title, was properly held to be neither an officer *de facto* nor *de jure*. In this case, however, the members last appointed to the board of health had been commissioned; had entered upon the duties of the office, and were holding its *indicia;* and were actually serving the public as members of the board of health when plaintiff first sought relief by injunction. They had actually taken part in the business of the board. We cannot escape the conclusion that even if they obtained their advantage by trickery, as appellant asserts, they were the *de facto* officers at the time relief by injunction against them was sought, and that therefore the writ prayed for was properly refused. Plaintiff had a plain, speedy, and adequate remedy in the statutory equivalent for

proceedings in the nature of *quo warranto*. It follows that the conclusions reached by the learned chancellor who presided at the hearing in the superior court were correct and the judgment is therefore affirmed.

Shaw, J., Henshaw, J., and Lorigan, J., concurred.

SLOSS, J., dissenting.—I dissent. At a time when the plaintiff and his associates were lawfully occupying positions as members of the board of health, the mayor undertook to remove them and to appoint other persons in their places. While the fact is not stated in so many words, it appears clearly enough from the averments of the complaint that the mayor took this action without any notice to the incumbents and without affording them any opportunity to be heard in their defense. On January 31, 1910, the persons appointed as successors went to the rooms occupied as the offices of the board of health. The plaintiff and his associates were not present, but demand was made of an inspector that such new appointees be admitted to the rooms of the board. It was found that the rooms were locked, whereupon, after unsuccessful efforts to gain entry through the window and by means of a fire-escape, recourse was had to the services of a locksmith, who opened the door. The new appointees then took possession of the rooms and of all the official records and papers of said board. Two days thereafter, on February 2, 1910, the plaintiff verified the complaint herein, and the action was commenced on the fourth day of February. The plaintiff and his associates never acquiesced in the attempt to remove them from office and never abandoned their offices. On the contrary, they proceeded with all reasonable diligence to assert their rights to possession, and their intention to contest the legality of the mayor's action.

On these facts it seems clear to me that the plaintiff was entitled to the injunction which he sought. It is, of course, the established rule that a court of equity will not take jurisdiction of an action for the purpose of trying the title to public office. But it is also well settled that where there is a *bona fide* contest between two persons, both claiming to be entitled to the same office, a court of equity will issue its injunction to protect the officer in possession against the interference of

an adverse claimant until the latter has established his title by appropriate proceedings at law. (High on Injunctions, 3d ed., sec. 1315; *Brady* v. *Sweetland,* 13 Kan. 41; *Braidy* v. *Theritt,* 17 Kan. 468; *Guillotte* v. *Poincy,* 41 La. Ann. 333, [6 South. 507, 5 L. R. A. 403] ; *Goldman* v. *Gillespie,* 43 La. Ann. 83, [8 South. 880] ; *State* v. *Superior Court,* 17 Wash. 12, [61 Am. St. Rep. 893, 48 Pac. 741] ; *Reemelin* v. *Mosby,* 47 Ohio St. 570, [26 N. E. 717] ; *City of Huntington* v. *Cast,* 149 Ind. 255, [48 N. E. 1025] ; *Sullivan* v. *Haacke,* 5 Ohio N. P. 26.) The soundness of this proposition is not questioned in the main opinion. It is, however, stated that on the facts here shown the new appointees, rather than the plaintiff and his associates, were in possession of the office. I think this conclusion rests upon a mistaken view as to what constitutes possession of an office. An office is a franchise; it consists of the exercise of intangible rights and duties pertaining to its occupant; and possession of the office does not depend on the mere physical holding of the rooms and furniture ordinarily used in the performance of the functions of the office. (*Mead* v. *Treasurer,* 36 Mich. 416; *Lawrence* v. *Hanley,* 84 Mich. 399, [47 N. W. 753] ; *Brady* v. *Sweetland,* 13 Kan. 41; *Braidy* v. *Theritt,* 17 Kan. 468; *Sullivan* v. *Haacke,* 5 Ohio N. P. 26.) Actual possession can be obtained from the occupant of an office by his surrender or abandonment of the office, or by his ouster in the course of legal proceedings, and in no other way. (*Oliver* v. *Jersey City,* 63 N. J. L. 653, 76 Am. St. Rep. 228, 44 Atl. 709, 48 L. R. A. 412] ; *Mead* v. *Treasurer,* 36 Mich. 416; *State* v. *Draper,* 48 Mo. 213; *Hallgren* v. *Campbell,* 82 Mich. 255, [21 Am. St. Rep. 557, 46 N. W. 831, 9 L. R. A. 408] ; *Braidy* v. *Theritt,* 17 Kan. 468; *In re Cleveland,* 51 N. J. L. 311, [17 Atl. 772].)

If the plaintiff and his associates had been in session as a board of heath at the time of the entry of the persons assuming to act as their succesors, and the latter had forcibly thrown them out of the rooms and installed themselves therein, it would hardly, I think, be claimed that possession of the office had at once passed from the old board to the new. I do not think the case is any different where, in the absence of the occupant, access to the rooms is obtained surreptitiously or, as in this case, by the use of such force as is involved in picking the lock of the door. "It would be a strange doctrine to

announce," says the court in *Braidy* v. *Theritt,* 17 Kan. 468,
"that whenever an officer steps out of the place where he usu-
ally does business, that any person who may choose to claim
the office may at once step in, and become immediately an
officer *de facto.* Such a short road to obtain a contested office
has never yet been opened." A person asserting title to an
office which he finds to be occupied and claimed by another
should not be permitted to establish his disputed right by
resort to the kind of means here employed. Nothing can be
more unseemly or detrimental to the public interest than a
struggle between contending claimants for the physical pos-
session of rooms, documents, and records employed in the
performance of the functions of a public office. Proceedings
in the nature of *quo warranto* (Code Civ. Proc., secs. 803 to
810) furnish an adequate and the appropriate remedy for
usurpation of office. This is, indeed, recognized by the ma-
jority opinion, but I think the court misapplies the doctrine
in saying that this remedy was open to the *plaintiff.* In my
view the plaintiff, being first in possession and not having sur-
rendered or abandoned his right, was entitled to the protection
of the writ of injunction. The *defendants,* who were seeking
to oust him, were the ones who should have been compelled to
resort to proceedings in a court of law to establish their right.
*Scott* v. *Sheehan,* 145 Cal. 661, [79 Pac. 353], should not be
regarded as an authority supporting the position of the re-
spondents here. The decision in that case was made imme-
diately after the disputed question of title to the office had
been finally adjudicated (*Sheehan* v. *Scott,* 145 Cal. 684, [79
Pac. 350]), and the appeal from the order of injunction pre-
sented a moot question, or as the court puts it, one "purely
of academic interest." Under these circumstances the finding
of the trial court was sustained without a careful examination
of the evidence.

I think the judgment should be reversed.

'Angellotti, J., and Beatty, C. J., concurred.

Rehearing denied.

In denying a rehearing, the following opinion was rendered
on October 7, 1911:—

SHAW, J.—The appellant asks a rehearing of this case upon the ground that the decision, and some remarks in the opinion, conflict with the decision and opinion in *Bannerman* v. *Boyle, ante,* p. 197, [116 Pac. 732].

There is nothing inconsistent in the two decisions. They determine different questions, upon different facts. In this case the title to the office is not, and could not be, in issue. The decision, in brief, is that if one is a *de facto* officer, that is, in actual, peaceable possession of the office, claiming the right to hold it and regularly performing its duties, his title cannot be assailed by a suit in equity to enjoin him from doing so, nor will an injunction issue upon a suit by the true holder of the title to an office to restrain the usurper and others from removing the true holder, where it appears that the true holder was ousted and the usurper was in peaceable and undisturbed possession at the time suit is begun and for the four days next preceding. The decision in the Bannerman case, upon the question on which it is supposed to conflict, was that, under the conditions there existing, a *de jure* officer who has been unlawfully ousted may compel payment of his salary by a suit in *mandamus* against the auditor, that in such *mandamus* suit the title of the plaintiff to the office may be put in issue and tried, and that, under the San Francisco charter, a member of the board of education cannot be removed by the mayor except for good cause and after he has been given a hearing as to the cause, or an opportunity to be heard thereon. The usurper was not a party in the Bannerman case. Neither the auditor nor any authorized representative of the city or state is a party to the Barendt suit. The respective points decided in the two cases have no bearing on each other.

At the time these things took place a removal, without hearing, of a San Francisco officer, was generally believed to be lawful, under the supposed application of the decision of *In re Carter,* 141 Cal. 316, [74 Pac. 997], a case under the San Diego charter, to the provisions of the San Francisco charter. This indicates that Barendt's removal was not made in bad faith by the mayor and that the persons appointed by him to fill the supposed vacancies believed they had the right of possession. The opposite inference would be drawn since the decision in the Bannermann case that such removal cannot

be made without a previous hearing. In view of the provisions of sections 75 and 76 of the Penal Code, making it a misdemeanor to willfully and knowingly intrude into an office to which the intruder has not been elected or lawfully appointed, and a felony for one to withhold from his successor an office after his term has expired, or to willfully and unlawfully withhold from any person entitled thereto any property, records, or papers belonging to the office, it is not likely that other attempts of this kind will occur in the future.

In explanation of the language of the opinion in this case it is to be remarked that this case was first submitted and the opinion herein was written before the Bannerman case was decided, otherwise some of the statements in the opinion might perhaps have been omitted as unnecessary to the discussion. Counsel misunderstand the effect of the remark in the opinion that "the mayor seems to have followed the provisions of the charter with respect to notifying the board of supervisors of the cause of removal of an officer, and his statement of such cause seems to have been entered of record in the proceedings of the board in accordance with the charter." These things were done regularly as the charter prescribes, but in the connection in which this passage occurs it does not mean that the removal was for that reason valid without any previous hearing as to the cause. These facts were stated solely as foundation for the argument that these records, coupled with a certificate of appointment by the mayor, regular on its face, gave defendant Sharp color of title to the office.

The decision does not leave the people or the ousted officer without civil remedies. Such officer may obtain his salary, as stated, or he may apply for leave to sue in *quo warranto,* which we must assume would be granted in all proper cases, thus giving a remedy for both the officer and the people. The people would also be entitled to protection by the auditor or treasurer withholding the salary of the office from the usurper, in which event the usurpation, if it should occur, would probably soon come to an end.

The petition for rehearing is denied.

Lorigan, J., Melvin, J., and Henshaw, J., concurred.