WARREN, Contestant, v. BROWN, Contestee.

(234 N. W. 38.)

(File No. 7176.   Opinion filed December 31, 1930.)

*Danforth & Barron,* of Sioux Falls, for Plaintiff.

*M. A. Brown,* of Chamberlain, and *O'Keeffe & Stephens,* and *T. B. Thorson,* all of Pierre, for Defendant.

CAMPBELL, J.   At the general election held November 4, 1930, Frederick A. Warren and James Brown were candidates for the office of judge of the Supreme Court of the State of South Dakota from the Second Supreme Court District.   On December 4, 1930, pursuant to section 7296, Rev. Code 1919, the state canvassing board as constituted by section 7295, Rev. Code 1919 (as amended by chapter 117, § 3, Laws 1929), canvassed the vote cast for said office (among others) and determined and certified that James Brown received 64,300 votes for said office and that Frederick A. Warren received 64,217 votes for said office, giving to the said Brown a majority of 83 votes, whereupon a certificate of election was issued to the said Brown.

Within twenty days thereafter, and on or about December 11, 1930, the candidate Warren, as contestant, instituted the present proceeding as an original proceeding in this court against the candidate Brown as contestee, pursuant to the provisions of sections 7328 to 7335, inclusive, Rev. Code 1919, to contest said election.   In addition to serving and filing notice of contest, pursuant to section 7328, Rev. Code 1919, the contestant, pursuant to section 7334, Rev. Code 1919, made application to this court for an order directing a recount of the ballots cast for said office in thirty-two counties of the state, and served notice upon the contestee that he would make application to this court on December 18, 1930, for an order directing such recount.   At the time fixed in said notice of application contestant and contestee appeared before this court by their respective counsel, whereupon before any other or further proceedings were had, the contestee challenged the jurisdiction of this court by motion to quash the entire proceeding, which motion was in the following language: "Comes now James Brown, contestee above named, and upon all of the files, records, pleadings and moving papers herein, moves the above named court to strike the above entitled proceedings from its files and records and to quash the same for the reason that the court is without jurisdiction to enter-

tain or hear such a proceeding, as the purported statutes, viz., sections 7328 to 7335 inclusive, the Revised Code of 1919 of South Dakota, under which said proceeding is apparently brought, are repugnant to sections 2 and 3 of article 5 of the Constitution of the State of South Dakota, and are wholly ineffective and void."

Counsel were heard in oral argument upon the jurisdictional question thus raised, and briefs were filed therein by respective counsel, and the matter taken under advisement by the court, and it is that jurisdictional question that is now before us for disposition upon the motion to quash.

Our statutes regarding election contests seem to be tripartite in nature and origin. By sections 7348 to 7364, Rev. Code 1919, procedure is outlined for instituting contest, taking testimony for subsequent presentation to the Legislature, etc., in cases where it is desired to contest the election of a member of the Legislature. This portion of our present statutes appears to have had its origin with the first Territorial Code Commission as chapter 47 of the Revised Political Code of 1877.

Sections 7336 to 7347, inclusive, Rev. Code 1919, provide a procedure in the circuit court for contesting election to county office, etc., which proceedings by virtue of section 6326, Rev. Code 1919, have application in municipal matters. This law also appears to have its origin in territorial days as chapter 54, Laws Dakota 1885. Its structure has been carried forward without substantial change, and it has been many times availed of.

Sections 7328 to 7335, inclusive, Rev. Code 1919, establish a procedure for contesting election to state office by an original proceeding in this court, and those are the sections under which contestant inaugurated and seeks to continue the present proceeding, and the sections whose constitutional validity is challenged by contestee's motion. For convenience said sections 7328 to 7335, inclusive, will be hereinafter in this opinion referred to as "the contest statute." This procedure for contesting state office was not established until some ten years after statehood, having its origin in chapter 82, Laws 1899, and continuing thenceforward without substantial change.

The constitutional provisions of this state which are invoked by the contestee in the effort to have the contest statute held entirely invalid are those relating to the jurisdiction of the Supreme

Court of this state, being sections 1, 2, and 3 of article 5, and section 27 of article 3, which read respectively as follows:

Article 5, § 1: "The judicial powers of the state, except as in this constitution otherwise provided, shall be vested in a supreme court, circuit courts, county courts, and justices of the peace, and such other courts as may be created by law for cities and incorporated towns."

Article 5, § 2: "The supreme court, except as otherwise provided in this constitution, shall have appellate jurisdiction only, which shall be coextensive with the state, and shall have a general superintending control over all inferior courts under such regulations and limitations as may be prescribed by law."

Article 5, § 3: "The supreme court and the judges thereof shall have power to issue writs of habeas corpus. The supreme court shall also have power to issue writs of mandamus, quo warranto, certiorari, injunction and other original and remedial writs, with authority to hear and determine the same in such cases and under such regulations as may be prescribed by law: Provided, however, that no jury trials shall be allowed in said supreme court, but in proper cases questions of fact may be sent by said court to a circuit court for trial before a jury."

Article 3, § 27: "The legislature shall direct by law in what manner and in what courts suits may be brought against the state."

Contestee, as the essential foundation to support his motion, premises that, under a Constitution such as ours and under the provisions above set out, the jurisdiction of the Supreme Court, as specified in the Constitution, is exclusive, and that the Legislature can neither add to nor detract therefrom, excepting only to such extent as the Constitution itself may expressly or by necessary implication authorize. Such premise is so clearly correct as scarcely to be open to question and it is not seriously questioned by contestant. See Winner Milling Co. v. C. & N. W. Ry. (1921) 43 S. D. 574, 181 N. W. 195; dissenting opinion in State ex rel Kriebs v. Halladay (1928) 52 S. D. 497, 219 N. W. 125 (and in this connection it may be stated that all the judges agreed that the views expressed in such dissenting opinion relating to the jurisdiction of this court were correct; but a majority of the judges thought that, inasmuch as only questions of law were presented, and the jurisdictional question was not raised by the parties, and this court had

previously and frequently assumed such jurisdiction, and if jurisdiction therein were refused the case would merely go into the circuit court and come directly back to this court on appeal, it was not prudent for the court to raise the jurisdictional point of its own motion and dispose of the case thereon). See, also, Hubbell v. McCourt (1878) 44 Wis. 584; State v. Flinn (1820) Minor (Ala.) 8; In re Nichols' Petition (1897) 180 Pa. 591, 37 A. 95; Whipple v. Stevenson (1898) 25 Colo. 447, 55 P. 188; Edney v. Baum (1903) 70 Neb. 159, 97 N. W. 252; In re Burnette (1906) 73 Kan. 609, 85 P. 575; Gantt v. Brown (1912) 244 Mo. 271, 149 S. W. 644, Ann. Cas. 1913D, 1283; In re Bowers (1916) 137 Tenn. 193, 192 S. W. 919; State v. True (1919) 26 Wyo. 314, 184 P. 229.

Accepting this fundamental premise, it is apparent that the precise questions for solution in order to determine the constitutionality of the contest statute are these: First, does the Constitution of this state in self-executing terms confer upon this court any jurisdiction such as is necessarily invoked in a proceeding under the contest statute; second (if the first question be answered in the negative), does the Constitution, either expressly or by necessary implication, authorize the Legislature to confer upon this court such jurisdiction as is attempted to be conferred by the contest statute?

A negative solution of the first question is apparent from a mere inspection of the Constitution. Jurisdiction under the contest statute is original and in no sense appellate. The only original jurisdiction directly conferred upon this court by self-executing constitutional provision is the power specified in the first sentence of section 3, art. 5, Constitution (supra) to issue writs of habeas corpus. Quite palpably an election contest in no wise partakes of the nature of a writ of habeas corpus, and original jurisdiction thereof in this court must therefore depend upon the constitutional power of the Legislature and not upon any self-executing provision of the Constitution.

Again examining the Constitution, it is apparent that the Legislature under section 27, art. 3, Constitution (supra), has the power to authorize the bringing in this court of a suit against the state. It is immediately manifest that the proceeding authorized by the contest statute is not in any sense a suit against the state, and it is unnecessary therefore further to consider section 27 of article 3.

■ ·There remains for consideration the portion of section 3 of article 5, following the first sentence, and reading as follows: "The supreme court shall also have power to issue writs of mandamus, quo warranto, certiorari, injunction and other original and remedial writs with authority to hear and determine the same in such cases and under such regulations as may be prescribed by law." This is a plain constitutional declaration that this court shall have certain powers "in such cases and under such regulations as may be prescribed by law." It is impossible to escape the implication necessarily embraced in said section by transposition of terms, namely, that the Legislature is authorized and empowered to determine, prescribe, and declare the cases in which, and the regulations under which, the Supreme Court may issue the writs there specified.

The question for solution therefore may be still further narrowed to this: is the enactment of the contest statute a proper exercise of any legislative power expressly or necessarily implied in section 3, art. 5, of the Constitution, which, in substance, authorizes the Legislature to determine in what case and under what regulations this court may originally issue "writs of mandamus, quo warranto, certiorari, injunction and other original and remedial writs, with authority to hear and determine the same"?

■ ■ In advance of a more detailed consideration of this problem, some general observations in connection therewith may here be pertinent.

There is presented in this case no question of judicial encroachment upon other branches of the government, nor is there any question of statutory construction to ascertain legislative intent. The intent of the statute is too clear for argument. The Legislature very clearly stated that it meant and intended that certain election contests specified in the statute should be tried originally in the Supreme Court in the manner and under the circumstances stated in the statute. There arises only a question of legislative power under the Constitution. Contestee has asked this court judicially to declare that the Legislature is prohibited by the Constitution from doing what it very plainly and clearly intended and attempted to do. As always, when the constitutionality of legislative action is questioned, every presumption ought to be and is in favor of constitutionality. Any doubt which may exist should be resolved in favor of constitu-

tionality. As stated by Gaynor, J., in holding a statute constitutional in Metz v. Maddox (1907) 121 App. Div. 147, 105 N. Y. S. 702, 705 (subsequently reversed on other grounds in 189 N. Y. 460, 82 N. E. 507, 121 Am. St. Rep. 909): "Much may be said on the opposite side of this question. * * * In the last analysis * * * it seems at the best very difficult to say that there is no doubt on the matter. And that is the test of the right of courts to declare acts of the Legislature void. To depart from it is to enter into the mere rage of upsetting what the Legislature has done."

And, as pointed out by Sherwood, J., in a previous decision of this court: "It is settled law in this state that no law shall be declared unconstitutional unless the invalidity is so plain and palpable as to leave no reasonable doubt. Peterson Oil Co. v. Frary, 46 S. D. 258, 192 N. W. 366." State v. Hoven (1923) 47 S. D. 50, 195 N. W. 838, 840.

It is indisputable that any court ought seriously to hesitate and consider before refusing to exercise jurisdiction expressly and definitely imposed upon it by the plain words of a legislative act which has stood unquestioned for more than thirty years, and ought not to refuse to entertain and exercise such jurisdiction unless upon mature deliberation it is very plain that the attempt to confer such jurisdiction on the court is entirely beyond the power of the Legislature under the Constitution.

It is in the light of these principles that we should now proseed to the examination of the statute in question and the further consideration of the constitutional provision embodied in that portion of section 3 of article 5 last above quoted.

■■ We devote ourselves first to some consideration of the contest statute. It has long been universally recognized that the conduct of elections and the determination of the result thereof are matters primarily political, and that the judicial department of the sovereignty will not customarily interfere therewith. The proceeding which we commonly call an election contest is in form a creature of the statute. See Smith v. Lawrence (1891) 2 S. D. 185, 49 N. W. 7; Batterton v. Fuller (1894) 6 S. D. 257, 60 N. W. 1071; Treat v. Morris (1910) 25 S. D. 615, 127 N. W. 554; Kundert v. City of Madison (1917) 39 S. D. 43, 162 N. W. 898.

█ Nevertheless it cannot truthfully be said that the common law knew no judicial investigation into the conduct of elections or the correctness of the result thereof. Proceedings in the nature of quo warranto have long been availed of to try title to elective office as between individual claimants and in connection therewith to determine all relevant questions regarding the conduct of the election and the legality of the declared result. Comparing statutory proceedings for contesting an election with proceedings in the nature of quo warranto to try title to office, it may be said in general that it will usually be found that the statutory proceeding for contest appears to be intended to be made less cumbersome, less expensive, speedier, and perhaps more summary in form than proceedings in the nature of quo warranto. It will also be observed that contest proceedings are by their terms often made applicable and sometimes construed by the courts to be applicable to election matters which do not involve the right of an individual to an elective office and which were not cognizable at the common law under quo warranto; as for example, section 7341, Rev. Code 1919, providing for contesting an election determining the removal or change of a county seat, and Treat v. Morris, supra, holding that the statutes of this state authorized the contesting in the circuit court of an election upon the question of whether or not intoxicating liquors should be sold under the old "local option" laws.

At the common law quo warranto or a proceeding in the nature thereof was the proper and appropriate remedy to test the right or title to an office. 51 C. J. 315; Independent School District of Manning v. Miller, 189 Iowa, 123, 178 N. W. 323; People v. Hotz, 327 Ill. 433, 158 N. E. 743; State v. Thompson, 211 Ala. 429, 100 So. 756. It was also the proper proceeding in which to determine the right of the relator to the office as against the claim of the possessor of the office. Barendt v. McCarthy, 160 Cal. 680, 118 P. 228; State v. Price, 30 Ohio App. 218, 164 N. E. 765 (affirmed 119 Ohio St. 558, 165 N. E. 44); Kile v. Graham, 108 Okl. 179, 235 P. 524. And if illegality in the election was charged, the validity of the election might be examined in all respects under quo warranto. State v. Sadler, 25 Nev. 131, 58 P. 284, 59 P. 546, 63 P. 128, 83 Am. St. Rep. 573. And the court in quo warranto was authorized to go back of the return of the election officers and back of the certificate of election, State v. Deschutes County, 88 Or. 661,

173 P. 158; State v. Meilike, 81 Wis. 574, 51 N. W. 875; Barnett v. Midgett, 151 N. C. 1, 65 S. E. 441; and might extend the inquiry to the ballots themselves and determine the validity thereof and count the same, People v. Londoner, 13 Colo. 303, 22 P. 764, 6 L. R. A. 444; State v. Baker, 35 Nev. 300, 129 P. 452; State v. Raisler, 133 Wis. 672, 114 N. W. 118. Turning now to the contest statute involved in this case, we find, of course, that the statute is not phrased in the language of quo warranto. The initial document is denominated a notice of contest and not an application for writ of quo warranto, or information in quo warranto, or complaint in a civil action in the nature of quo warranto. The statute provides nevertheless for the framing of issues as to the validity of the election or "the right of any person declared duly elected to any state office" by notice of contest and answer thereto and for the trial of the issues so framed in this court. There is provision in sections 7334 and 7335, Rev. Code 1919, for a recount of ballots in the various counties by the respective clerks of courts if the same is requested by the parties to the contest and this court sees fit in its discretion to order such recount, which provision for recount is in its nature ancillary to the contest and conditioned by the statute upon the pendency of the contest. In some respects the contest statute is not as broad as a quo warranto proceeding at the common law; for example, under the terms of the contest statute, the question could probably not be raised that subsequent to the election, and independently thereof, matters had occurred which worked a forfeiture of the office, though at the common law quo warranto was the proper remedy in such case.

It is manifest therefore that the scope of the contest statute is not completely coextensive with the scope of proceedings in quo warranto at the common law. It is equally true, however, that nothing is purported to be authorized by the contest statute which could not have been accomplished, in substance, at the common law by proceedings in the nature of quo warranto. The essence is the same, although the phraseology and formalities are somewhat simplified. Under the contest statute proceedings may be instituted, and in fact must be instituted, "within twenty days after the canvass of the votes for such election is completed," whereas at the common law quo warranto to try title to office (including the validity of election thereto) would not lie until the party against

whom the proceeding was instituted had entered into the possession and exercise of office. This we are not able to regard as a serious or important distinction. We think it might very well be competent for the Legislature to prescribe that quo warranto proceedings to try title to office and the validity of election thereto might be instituted against any person claiming the title to such office at a definite date in futuro, at any time after he had been declared by the proper authorities elected to such office, had received a certificate of election, was claiming title thereto, and was announcing that he would enter upon the exercise thereof upon the arrival of the first day of the term of office. To summarize, the contest statute provides for the determination in this court of a controversy between two persons as to the right to elective state office in which, of course, the state has an interest. The controversy is of the same nature and between the same parties as might have been the case in a proceeding at quo warranto under the common law at least after the statute of 9 Anne c. 20 in 1711. The nomenclature and procedural forms are not those of quo warranto, but the essence and substance are the same, excepting only that under the contest staute the proceedings may be initiated after the election and declaration of claim of right to the office without waiting for actual entry therein.

With this analysis of the contest statute we revert again to the Constitution to ascertain the legislative power. None of the writs mentioned in section 3 of article 5 of the Constitution were made use of at the common law to investigate the validity of elections, either directly or indirectly, except only the writ of quo warranto. It would seem therefore that, if the Legislature has power to enact the contest statute, it must be under the power implicit in section 3 of article 5 to prescribe the cases in which, and regulations under which, this court may "issue writs of * * * quo warranto," and to that form our question has finally narrowed. Whether the Legislature of this state has extended any general authority to this court to issue writs of quo warranto may well be doubted. See discussion in dissenting opinion in State ex rel. Kriebs v. Halladay, 52 S. D. 497, 219 N. W. 125, 127, at page 502 et seq. of the state report, cited supra. But the power of the Legislature so to do if it sees fit is beyond any possible question; and it is plain that the Legislature may give this court a limited power to issue writs

of quo warranto, restricted to "such cases and under such regulations" as the Legislature may prescribe.

We come then to consider just what was meant and intended by the constitutional phrase "power to issue writs of * * * quo warranto." Proceedings in the nature of quo warranto extend back to time immemorial, and their earliest history is "lost in the mists of antiquity." This matter is adverted to in State ex rel. Kriebs v. Halladay, supra. For the purposes of this case it is sufficient to say that historically proceedings in the nature of quo warranto have taken three forms, and upon occasion two or more of the forms have probably existed contemporaneously. The first form was the writ of quo warranto. The proceeding was civil in form and the writ a high prerogative one. This was the only form of proceeding in the nature of quo warranto until the cessation of the eyre courts (probably about 1340) when there began to come into use proceedings by "information in the nature of quo warranto." This was a proceeding criminal in form, but nevertheless made use of as essentially civil in nature and to attain the same civil ends formerly attained by the writ of quo warranto. The high prerogative nature of the proceeding was done away with by statute (9 Anne, c. 20) in England in 1711, since which time the information in the nature of quo warranto might issue upon the relation of the subject as distinguished from the crown. Still later by statute in many, if not most, jurisdictions the place of the writ of quo warranto and of information in quo warranto was largely taken by a civil action in the nature of quo warranto to accomplish the same ends formerly reached by the writ or by the information. The seventh session of the Territorial Legislature of Dakota by section 347, Code Civil Procedure 1867-68, provided: "The writ of quo warranto and proceedings by information in the nature of quo warranto are abolished; and the remedies heretofore obtainable in those forms may be obtained by civil actions, * * *" which statute was re-enacted by the Twelfth Session of the Territorial Legislature as section 531, Revised Code of Civil Procedure Dakota 1877, reading as follows: "The remedies formerly attainable by * * * the writ of quo warranto, and proceedings by information in the nature of quo warranto, may be obtained by civil actions. * * *" That there were technical distinctions in matters of practice and procedure between the writ of quo warranto, the in-

formation in the nature of quo warranto, and the civil action in quo warranto, is undoubtedly true, but the same purpose was intended to be ccomplished whichever form was employed. In State ex rel. Kriebs v. Halladay, supra, it was queried whether, under the Constitution, the legislative power might be limited to authorizing this court to issue and try writs of quo warranto, as contradistinguished from giving this court jurisdiction over informations in the nature of quo warranto or civil actions in the nature of quo warranto. The precise point was not material to decide in that opinion, and no effort was there made to determine it. But we have now further investigated and are of the opinion that the legislative power is not to be construed as so precisely limited or technically restricted. That was the intimation of this court by dictum in Wright v. Lee (1893) 4 S. D. 237, 55 N. W. 931, 934, in the following language: "We might say in passing that the constitutional authority of the supreme and circuit courts to issue writs of quo warranto, and to hear and determine the same, must be understood to give such courts jurisdiction of cases in which the information in the nature of quo warranto has become a substitute for the ancient writ."

And so far as legislative power is concerned, we think that dictum states the sound rule. The writ of quo warranto, strictly speaking, was probably little used either in England or anywhere else after the latter part of the fourteenth century, approximately five hundred years prior to the adoption of our Constitution. It had been specifically abolished as a procedural form by statute in the Territory of Dakota approximately twenty years before the adoption of our Constitution. We think it must be held that the power in substance delegated to the Legislature by section 3 of article 5 to prescribe the cases when this court may issue "writs of quo warranto" must be construed to mean a delegation of power to the Legislature to prescribe cases wherein this court may entertain original jurisdiction similar in nature and essence to that entertained by courts at the common law and provided for by the stautes of Dakota Territory in the nature of quo warranto, whether the procedural form was technically by writ of quo warranto, by information in quo warranto, or by civil action in the nature of quo warranto. In other words, whatever might properly be reached at the common law or under the law of Dakota Territory by quo

warranto, whether the procedural form was writ, information, or civil action, may be by the Legislature in its discretion intrusted to the original jurisdiction of this court.

"The primary end and intent of this Section was to confer upon the Supreme Court general revisory power over the proceedings of other Courts, and original jurisdiction in certain specified cases. The writs of mandamus, quo warranto and habeas corpus are referred to as a convenient and usual means of marking out the limit of jurisdiction intended for the Supreme Court. In legal parlance, the writ or form of action is allowed to personate and stand for the jurisdiction to which it relates to avoid inconvenient particularization. It is in this sense that the terms are here used. Such writs were then in common use, and furnished the common forms of expression for conveying the sense thus intended by this Section." Alexander v. McKenzie (1870) 2 S. C. 81.

"It was insisted that section 3 of article VII of the constitution only gave this court power to issue the writ of quo warranto at the common law; that the statutes of 1849 abolished the common law writ and substituted the proceeding by information; that the present statute abrogated both the writ and the information, and declared a civil action to be the only remedy; and as it was a mere civil action, it could not be entertained. We consider that the framers of the constitution looked rather to the substance than the form; that their object was not so much to give us power to issue a writ of a prescribed form, as to enable us to hear and determine controversies of a certain character; and that this jurisdiction could not be taken away by any legislative changes in the forms of the remedy, but that we might adopt any new process which was calculated to attain the same end." State ex rel. Attorney General v. Messmore (1861) 14 Wis. 115.

To the same effect, see State v. Gleason (1866) 12 Fla. 190; State v. West Wisconsin Ry. Co. (1874) 34 Wis. 197; Jarman v. Mason (1924) 102 Okl. 278, 229 P. 459.

"Constitutional provisions, empowering courts to issue writs of quo warranto, are framed, not to perpetuate the mere form of the proceeding, but to vest in the courts the substance of the jurisdiction; and it is competent for the Legislature to abolish the technical writ itself, and to substitute a civil action in its place." Paine, Law of Elections, § 794.

It is perhaps proper to state that, although the contest statute has been upon our books for more than thirty years without question as to its validity, occasion for questioning its validity seems not to have arisen until the present year. Early in the present month a proceeding was instituted under the contest statute to question election to the office of judge of the circuit court for the Fifth circuit in this state (Gardner v. Perry, case No. 7173), which, so far as we are able to ascertain, is the first proceeding ever attempted under this contest statute. In Gardner v. Perry the contestee made the same motion challenging the jurisdiction of this court. In fact the motion of contestee herein is almost a copy, verbatim et literatim, of the motion in the Gardner Case. In that case, however, on the day after oral presentation in this court, contestant therein requested that his contest be withdrawn and dismissed, pursuant to which request an order of dismissal was entered and no determination of the jurisdictional question was arrived at. The present case is therefore one of first impression in this court, notwithstanding the comparatively long existence of the statute.

We have found little assistance on the precise question involved in the decision of other courts. In Vail v. Dinning (1869) 44 Mo. (3 Post) 210; Canby v. Hartzell (1897) 167 Ill. 628, 48 N. E. 687 (followed without discussion in Baird v. Hutchinson [1899] 179 Ill. 435, 53 N. E. 567); and in Lauritsen v. Saword (1906) 99 Minn. 313, 109 N. W. 404, it has been held that a statute giving the Supreme Court original jurisdiction to try an election contest was beyond the legislative power under the state Constitution. In Thompson v. Redington (1915) 92 Ohio St. 101, 110 N. E. 652, Ann. Cas. 1918A, 1161, are dicta looking both ways on the question, but the legislative power is finally sustained by virtue of a specific constitutional provision (section 21, art. 2, Constitution Ohio, 1851) which is not found in our Constitution, and which reads as follows: "The General Assembly shall determine, by law, before what authority, and in what manner, the trial of contested elections shall be conducted."

We think the Missouri, Minnesota, and Illinois cases above mentioned are all distinguishable from the instant case, either upon the form of the Constitution, or upon the form of the contest statute involved, and in none of them is there any discussion on the

precise point of the meaning, scope, and extent of the constitutional grant of legislative power to prescribe cases and regulations for issuance of "writs of quo warranto," and in fact no such power was granted by the Illinois Constitution.

We arrive therefore at the conclusion that it is competent for the Legislature in its discretion to vest in this court original jurisdiction of all or any part of such matters as courts were accustomed, at the time of the adoption of our Constitution, to take jurisdiction of by virtue of writs of quo warranto, informations in the nature of quo warranto, or civil actions in the nature of quo warranto, and we do not think the name by which the Legislature may christen the jurisdiction thus conferred is material, nor are procedural forms or changes material. If by proceedings in the nature of quo warranto, under whatever form or name, a court could do at common law and at the time of the adoption of our Constitution substantially what the Legislature has undertaken to authorize this court to do by the contest statute in question, then we think the power of the Legislature to confer or impose such authority upon this court exists.

The Legislature by the contest statute has imposed upon this court original jurisdiction over a controversy which is, in nature, substance, and essence, a controversy that might have been decided at common law and under the laws of Dakota Territory in quo warranto, and such controversy is between parties who might have invoked the remedy of quo warranto. The identical powers and duties prescribed for this court under the contest statute might have been prescribed beyond possible question of constitutional power and validity had the Legislature used the nomenclature and procedural forms of quo warranto. It would, we think, be highly technical to refuse to entertain the jurisdiction merely because the Legislature has abandoned the nomenclature and machinery of quo warranto and called the proceeding by a different name. So to hold would be to place an artificial and highly technical limitation upon the legislative power which we are persuaded the framers of the Constitution never intended.

Not only are we unable to say beyond reasonable doubt that the Legislature has exceeded its constitutional power, but, on the contrary, it seems to us quite plain that the Legislature has not in fact exceeded its constitutional power. The validity of the con-

test statute must therefore be upheld, and the motion of contestee to quash the proceeding must be denied.

E. D. ROBERTS, Esq., a duly qualified member of the bar of this state, and judge elect of this court, sitting by order of the court in lieu of BROWN, P. J., who is a party to this proceeding and therefore disqualified.

SHERWOOD, Acting P. J., and POLLEY, BURCH, and ROBERTS, JJ., concur.